IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JURONE HAMMOND | * | |
| Petitioner | * | |
| v | * | Civil Action No. RDB-17-3721 |
| WARDEN JOHN S. WOLFE and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND | * * | |
| Respondents | * | |

***

## MEMORANDUM OPINION

Respondents have filed a Supplemental Answer in response to this Court's Order of March 16, 2023, directing them to address the claim identified by the Fourth Circuit in its decision remanding this case. ECF No. 48. Because Respondents assert that Petitioner's ineffective assistance of counsel claim is untimely, Petitioner was given an opportunity to demonstrate any basis for excusing the delay. ECF No. 51. On April 28, 2023, Petitioner filed his Reply. ECF No. 52. No hearing is necessary for the determination of the matters pending. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons stated below, the Petition shall be dismissed and a certificate of appealability shall not issue.

## BACKGROUND

On December 15, 2017, Petitioner Jurone Hammond, through counsel Laura Rhodes, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 alleging that the Circuit Court for Prince George's County failed to consider Hammond's youth and its attendant characteristics before sentencing him to three concurrent life sentences plus a consecutive term of fifteen years.

ECF No. 1 at 19. Hammond relied on the Supreme Court's decisions in *Miller v. Alabama*, 567 U.S. 460 (2012) and *Montgomery v. Louisiana*, 577 U.S. 190 (2016) to support his argument that the sentencing court's failure to consider "transient immaturity" versus "irreparable corruption" amounted to a violation of Hammond's constitutional rights under the Eighth Amendment. ECF No. 1 at 19-20, quoting *Miller*, 567 U.S. at 472. In tandem with his petition, Hammond moved for a stay and abeyance of his petition to enable his counsel to return to State court to exhaust his claim. ECF No. 2. This Court granted the stay after it determined that a stay of these proceedings did not run afoul of the cautionary language in *Rhines v. Weber,* 544 U.S. 269, 277 (2005) which warns a stay should only be used in limited circumstances because it "effectively excuses a petitioner's failure to present his claims." *Id*. This Court determined that Hammond had no opportunity to present his *Montgomery* claim to the appropriate Maryland courts for review before the timely filing of this petition and staying this matter did not operate to excuse an idle failure to pursue the claims presented. ECF No. 8 at 4-5.

This Court additionally found that Hammond's *Miller/Montgomery* claim was timely filed because the Petition was filed within one year of the Supreme Court's decision in *Montgomery* taking into account the period of time Hammond's claim was tolled while State court proceedings were pending. ECF No. 8 at 3-4, *see also* 28 U.S.C. § 2254(d)(2). Specifically, when the *Montgomery* decision was issued, Hammond was in the process of litigating post-conviction claims. *Id*. at 4. This Court declined Respondents' invitation to find that the Maryland Court of Appeals (*N.K.A.* Maryland Supreme Court) erroneously considered Hammond's Petition for Writ of Certiorari on its merits. *Id*.

The facts established at Hammond's jury trial were briefly summarized by the Maryland Court of Special Appeals (*N.K.A.* Appellate Court of Maryland) in its opinion affirming the trial court's denial of a "reverse waiver" to juvenile court.

> [T]he State established that the victim owed the appellant ten dollars for drugs she had purchased from him on another occasion.  When she did not repay him on demand, he dragged her by the hair into a friend's apartment.  Once inside the apartment, he burned her hands and wrists with a heated knife, poured alcohol over the burns, and forced her to engage in oral, vaginal, and anal sex. Appellant was sixteen years and four months old when he committed the offenses.

ECF No. 1-11 at 2.

Relevant to the issue remanded to this Court, Hammond filed a pro se status report on June 10, 2019, stating he had uncovered new evidence based on a revelation in a 2015 hearing on his motion to reopen post-conviction proceedings.  ECF No. 14.  According to Hammond, he was denied his right of choice of counsel by the Public Defender's office by virtue of an office policy that denied defendants the option of discharging counsel.  *Id*.  Specifically, he stated that:

> [M]y trial counsel's best friend and supervisor . . . testified that the reason my trial counsel did not apprise my trial judge of my wish to discharge trial counsel (and hire private counsel), <u>and</u> did not inform me of my right to confront my trial judge, was intentional and due to a "office policy" that she had implemented because she personally believed that defendants should not have the right to pick and choose which attorneys represented them at trial.

*Id*. at 3 (emphasis in original).  Hammond claimed that because he was told prior to trial that the judge would not allow him to discharge counsel and hire private counsel, his family abandoned plans to hire an attorney to represent him.  *Id*. at 1.  Hammond argues that the existence of this office policy created a conflict of interest for his trial attorney because counsel was forced to "choose the unethical and illegal 'office policy' of his personal friend and supervisor, or his ethical obligations and rights of his client."  *Id*. at 4.  He relies on *Weaver v. Massachusetts*, 582 U.S. 286 (2017) for the supposition that he need not show prejudice occurring as a result of trial counsel's

failure to allow him to discharge counsel in favor of private counsel because it is a structural defect in the trial.  *Id*.

In subsequent pro se status reports Hammond indicated that he had a dispute with his attorney, Laura Rhodes, regarding the propriety of filing a petition for a writ of actual innocence in state court.  ECF Nos. 15, 16.  This Court issued an Order on August 28, 2019, requiring Hammond's counsel to file a response to the allegations he raised in his status reports.  ECF No. 17.

Ms. Rhodes filed a status report together with an affidavit filed under seal.  ECF No. 18; ECF No. 19.  Counsel detailed difficulties she had encountered in obtaining funding to adequately present Hammond's case in state court including the need for expert testimony and a need for a neuropsychological expert as well as "significant differences between Mr. Hammond and [counsel] as to what arguments to make" which had stalled progress in state court proceedings. ECF No. 19.  Based on those differences, Ms. Rhodes indicated she could not proceed in state court with Hammond's case.  ECF No. 18 at 2.

Following counsel's status report, Hammond continued to file pro se status reports stating that "newly discovered evidence" established he was denied counsel of choice due to trial counsel's refusal to withdraw or to initiate procedures to withdraw, based on the office policy. ECF Nos. 20, 21 and 23.  In a pro se status report filed on March 2, 2020, Hammond claimed that he was denied counsel of choice because after he fired his trial attorney, the trial attorney refused to withdraw from the case and also failed to inform the court that Hammond wanted to discharge him.  ECF No. 24.  Additionally, Hammond claimed that Ms. Rhodes had told him she would withdraw from his case completely if he continued to insist on pressing his claims regarding his trial attorney and the Office of the Public Defender.  *Id*. at 2.  Hammond surmised that Ms. Rhodes'

position was grounded on the fact that Hammond's trial attorney and his supervisor were now "very powerful and respected judges in Maryland." *Id*.  In another pro se status report, Hammond explained his ineffective assistance of counsel claim as follows:

> At trial, I was represented by the office of the public defender. I wish to preface this with two points.

> (1) I did not want to testify. The court went off record prior to me going to the bathroom and I was asked if I wished to testify and I told them "no" and the judge said "O.K."

> When I came back from the bathroom my counsel told me that the judge said I had to testify and once back on the record, the judge clarified this with my attorney, without inquiring if this change of position was my own. I did not want to testify at no point!

> (2) As I was represented by counsel[,] I could not represent my claim of innocence "pro se." Therefore that responsibility fell onto the burdens and obligations of trial counsel to present it as a defense.

> Instead, my trial counsel conceded my guilt in spite of me begging him not to. This position of counsel was his from his introduction as my attorney, throughout my sentence (and even collateral review). . . . Ultimately[,] this is the reason that I decided to discharge my public defender to hire private counsel of my choice, well before my trial began.  He was my adversary not my public defender. . . .

> Pretrial[,] I did everything that I knew to be right to discharge my public defender.  I fired him in person, through correspondence, and third person.

> I wrote to each of his supervisors apprising them of my intentions.

> I even request[ed] (in accordance [with] the law) from each of them, what steps I needed to take to discharge my public defender and hire private counsel.

> During that period, I was under the logical impression that I had to go through the Public defender's Office to obtain any lawyer, private or public defender.

> This was based off the fact that my co-defendant hired her private attorney through that office and she told me that.

> In the State of Maryland, attorneys of a defendant, or any "officer of the court," is obligated to apprise the court of a defendant's pretrial request to discharge his

public defender. To not do so is a denial of that defendant's <u>mandatory</u> right to
a Maryland Rule 4-215(e) inquiry. . . .

\* \* \*

I explained this to Mrs. Rhodes that the testimony of the Hon. Maureen
Lamasney as my trial counsel's supervisor, was <u>newly discovered</u> and could not
otherwise been known to us, without her volunteress [sic]. I went on to explain
that Hon. Lamasney testified that the reason that my trial counsel or any of his
other supervisors did not inform my trial judge of my desires to discharge my
public defender and hire private counsel, or to respond to my request for
information on the matter (in accordance with State and federal law), was
because she implemented <u>and</u> enforced an office policy that forbade any of her
associate attorneys from honoring these legal obligations because she didn't
want it to look as though her attorneys at her public defenders office [were]
incapable of doing [their] jobs. <u>Creating an actual conflict of interest.</u>

ECF No. 25 at 2-5 (emphasis in original) (citations omitted).

The office policy Hammond references was explained by Ms. Lamasney at the February
12, 2015 hearing on Hammond's motion to reopen post-conviction proceedings. She stated during
her testimony that the Prince George's County Public Defender's Office had a policy "not to
reassign a case at the request of a defendant." ECF No. 1-9 at 41. The rationale behind the policy
was to "maintain . . . control over the assignment process," explaining that if every defendant was
allowed to pick and choose their lawyers there would be no consistent assignment policy. *Id*. She
further indicated that she had read "thousands" of letters from defendants requesting a new attorney
and surmised that most were the result of "personality conflict, or control issues, or the desire to
get a continuance" but if an attorney had come to her with a request to be taken off a case it could
be reassigned depending on the reason for the request. *Id*. at 41-42. Ms. Lamasney added that this
policy was a statewide office policy and that she was unaware of any caselaw in existence in 1996
or 1997 that required notification of the court that the defendant was requesting a new attorney.
*Id*. at 46. During cross-examination she explained that when a defendant continued to insist on
firing their trial attorney, they were advised that they would need to "take the public defender you

are assigned or you are free to hire your own attorney" and "if you can't afford to hire your own attorney you will get a public defender, but it will be our choice, not your choice." *Id*. at 47.

In light of the various status reports indicating Hammond had abandoned the sole claim that warranted a stay and abeyance, the stay was lifted in an Order dated June 1, 2020.  ECF No. 26.  Hammond then filed an amended pro se Petition on July 20, 2020.  ECF No. 30.  He raised two claims of ineffective assistance of trial counsel: (1) "trial counsel (burdened by an actual conflict of interest) caused [Hammond] to have [his] right to counsel of choice denied"; and (2) "trial counsel's law firm's illegal office policy caused [Hammond] to be denied [his] right to counsel of choice." *Id*. at 4.  Hammond accompanied his amended petition with a Motion to Reconsider the Order lifting the stay.  ECF No. 31.  As grounds for reconsideration Hammond claimed he was not being uncooperative with his attorney, Ms. Rhodes; rather he simply wanted to exhaust all claims in the state courts so they may be raised in this Court.  *Id*. at 4.  Based on these assurances, Hammond asked this Court to reconsider the Order lifting the stay to allow him to exhaust his ineffective assistance of counsel claims.  *Id*. at 6.

In denying Hammond's motion, this Court observed that:

> Mr. Hammond's choice to pursue his right of counsel claim through a Petition for Writ of Actual Innocence in the State courts removes the rationale for the stay and abeyance issued in this case.  His claim, that he was not permitted to discharge appointed counsel, is not filed within one-year of "the date on which the constitutional right asserted was initially recognized by the Supreme Court" and to the extent he seeks to add such a claim to the petition pending in this Court, the claim is not timely raised. 28 U.S.C. § 2244(d)(1)(C).  The only claim for which this matter was stayed for the purpose of allowing Mr. Hammond to exhaust State remedies was the claim grounded on the Supreme Court's announcement of rights pertaining to persons who received discretionary life sentences as juvenile offenders in *Montgomery v. Louisiana*, (2016).  It now appears that Mr. Hammond intends to abandon that claim and due diligence for pursuing the claim in State court can no longer be attributed to him, foreclosing any cognizable rationale for a continued stay in this case.  While the wisdom of Mr. Hammond's decision to do so is not readily discernible, it is his right to

abandon or pursue any claims he wishes to present.  However, his decision has
stripped away any basis for this case to continue to be stayed.

ECF No. 35 at 2-3.

On February 22, 2021, Hammond appealed the dismissal of his petition to the Fourth
Circuit Court of Appeals.  ECF No. 38.  On September 13, 2022, the Court of Appeals issued a
judgment dismissing the appeal and remanding the matter to this Court.  ECF No. 45.  It is the
appellate court's view that this Court had not "resolved *all* claims as to all parties" and therefore
it did not have jurisdiction over the appeal.  ECF No. 45-1 at 2, quoting *Porter v. Zook*, 803 F.3d
694, 696 (4th Cir. 2015) (emphasis in original).  This Court was directed to "consider Hammond's
argument that his attorney provided ineffective assistance by essentially abandoning Hammond at
trial and conceding Hammond's guilt without his consent."  *Id.*

In response to this Court's Order to respond to the claim referenced by the Court of
Appeals, Respondents assert that the claim is barred by the one-year filing limitation, is not subject
to statutory or equitable tolling, and Hammond has not established a credible actual innocence
claim.  ECF No. 50.  In his Reply, Hammond argues that the claims he is raising are not subject to
time constraints because they are "fundamental constitutional rights."  ECF No. 52.

## STANDARD OF REVIEW

### A.    Statute of Limitation

A Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 is subject to the
one-year filing limitation provisions found in § 2244, which provides that the filing period runs
from the latest of:

> (A) the date on which the judgment became final by the conclusion
> of direct review or the expiration of the time for seeking such
> review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

"[T]he one year limitation period is also subject to equitable tolling in 'those rare instances where -- due to circumstances external to the party's own conduct -- it would be unconscionable to enforce the limitation against the party and gross injustice would result.'" *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). To be entitled to equitable tolling, a federal habeas petitioner must establish that either some wrongful conduct by Respondents contributed to his delay in filing his petition or that circumstances that were beyond his control caused the delay. *See Harris*, 209 F.3d at 330. A federal habeas petition does not toll the one-year limitation period. *See Duncan v. Walker*, 533 U.S. 167, 175 (2001) (a federal habeas petition is not an application for State post-conviction or other collateral review within the meaning of § 2244(d)(2) and therefore does not toll the limitation period while it is pending).

## B.    Actual Innocence

Actual innocence is an "equitable *exception* to § 2244(d)(1), not an extension of the time statutorily prescribed." *McQuiggin v. Perkins*, 569 U.S. 383, 391 (2013) (emphasis in original). "[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims

on the merits notwithstanding the existence of a procedural bar to relief." *Id*. at 392.  The merits of a petition which is concededly time-barred, may be reached if "new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Id*. at 395, quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995).  In the context of an untimely petition, "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *Perkins*, 569 at 399.  "It would be bizarre to hold that a habeas petitioner who asserts a convincing claim of actual innocence may overcome the statutory time bar § 2244(d)(1)(D) erects, yet simultaneously encounter a court-fashioned diligence barrier to pursuit of [his] petition." *Id*.  "This rule, or fundamental miscarriage of justice exception, is grounded in the equitable discretion of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons."  *Id*. at 392.

Whether a petitioner has satisfied the miscarriage of justice exception requires the reviewing court to consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks omitted).  The new evidence must be evaluated with any other admissible evidence of guilt.  *Wilson v. Greene*, 155 F.3d 396, 404-05 (4th Cir. 1998).  "'To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial." *Schlup*, 513 U.S. at 324.  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.* at 315–17.

The Supreme Court "caution[ed], however, that tenable actual-innocence gateway claims are rare: 'A petitioner does not meet the threshold requirement unless he persuades the district

court that, in light of the new evidence, no juror acting reasonably would have voted to find him guilty beyond a reasonable doubt.'" *Perkins*, 569 U.S. at 386 (brackets omitted) (quoting *Schlup*, 513 U.S. at 329; *House*, 547 U.S. at 538; *Wilson*, 155 F.3d at 404 ("Claims of actual innocence . . . should not be granted casually.") (internal citations omitted).  To sustain a credible claim of actual innocence a Petitioner must marshal "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S at 324.  "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324.  The gateway actual innocence "standard is demanding and permits review only in the extraordinary case." *House*, 547 U.S. at 538 (citation omitted); *see, e.g., Perkins*, 569 U.S. at 401 ("We stress once again that the [actual innocence] standard is demanding."); *Wilson*, 155 F.3d at 404 ("Claims of actual innocence . . . presented . . . as gateways to excuse a procedural default . . . should not be granted casually.").

"At the same time, though, the [actual innocence] standard does not require absolute certainty about the petitioner's guilt or innocence." *House*, 547 U.S. at 538.  "Rather, the petitioner must demonstrate that more likely than not, in light of new and reliable evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *Teleguz v. Zook*, 806 F.3d 803, 809 (4th Cir. 2015) (citing *House*, 547 U.S. at 538).  The actual innocence determination "requires a holistic judgment about all the evidence and its likely effect on reasonable jurors applying the reasonable-doubt standard." *House*, 547 U.S. at 539 (internal citations and quotations omitted); *Finch v. McKoy*, 914 F.3d 292 (4th Cir. 2019).

In reviewing the record, the Court must "make a probabilistic determination about what reasonable, properly instructed jurors would do.  The Court's function is not to make an

independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *House*, 547 U.S. at 538 (internal citations and quotations omitted).  The petitioner must "demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.  Only if petitioner passes through the actual innocence gateway by satisfying this standard, can this Court consider and reach the merits of his claims." *Teleguz*, 689 F.3d at 329 (internal citations omitted).

## C.    Ineffective assistance of counsel

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The second prong requires the Court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors.  *Id.*  at 696.

Because the instant petition is subject to the provisions of the federal habeas statute, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("Act"), in order to obtain relief on his ineffectiveness claims, the petitioner must show that the adjudication of such claims at the state court level:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(Supp.1997).  The Act further provides that:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

§ 2254(e)(1).

As the Supreme Court held in *Strickland v. Washington*, *supra*, "a state court conclusion that counsel rendered effective assistance of counsel is not a finding of fact binding on the federal court to the extent stated by [former] 28 U.S.C. § 2254(d)[ now § 2254(e)(1)]." *Id*. at 698.  Rather, "although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254[(e)(1)], . . . both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.*  It follows, then, that § 2254(e)(1) applies to the state court's conclusion that the petitioner's trial counsel rendered effective assistance of counsel and this Court may not grant relief on this claim as long as the state court denied the claim based on a reasonable application of the *Strickland* standard to the facts presented in the state court proceeding.

## ANALYSIS

As explained below, Hammond's ineffective assistance of counsel claim alleging that counsel abandoned him during trial is untimely.  Further, if the claim had been filed in a timely manner, it would fail on the merits.

### A.    Timeliness

The date Hammond's conviction became final by the conclusion of direct review is April 21, 1998, or fifteen days after the Appellate Court of Maryland issued its mandate on April 6, 1998.  Absent another basis for calculating the one-year filing limitation, Hammond's time for

filing a federal habeas petition expired one-year later, on April 21, 1999.  *See* 28 U.S.C. § 2244(d)(1)(A).  As noted, this Court found Hammond's petition as originally filed to be timely because it was filed within one-year of "the date on which the constitutional right asserted was initially recognized by the Supreme Court," the right asserted was newly recognized, and the Supreme Court's decision was made "retroactively applicable to cases on collateral review."  28 U.S.C. § 2244(d)(1)(C).  Specifically, this Court found that the only claim asserted by Hammond in his petition was that he was improperly subjected to a life sentence despite his status as a juvenile in contravention to the Supreme Court's decisions in *Miller v. Alabama*, 567 U.S. 460 (2012) and *Montgomery v. Louisiana*, 577 U.S. 190 (2016).

Hammond then abandoned his *Miller/Montgomery* claim and now asserts an ineffective assistance of counsel/choice of counsel claim which this Court previously found untimely. Specifically, Hammond claims that his trial attorney provided ineffective assistance of counsel by essentially abandoning him and conceding his guilt at trial without his consent.  ECF Nos. 25 at 3, 33 at 3, and 45-1 at 2.  This claim is not subject to the limitation calculation under § 2244(d)(1)(C), rather, it is subject to the limitations period noted in § 2244(d)(1)(A) and must have been filed within one-year of the date the judgment became final.  The timeliness of Hammond's original claim did not revive his ineffective assistance of counsel claim.  "If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance."  *Mayle v. Felix*, 545 U.S. 644, 662 (2005), *see also Fielder v. Varner*, 379 F.3d 113, 122 (3rd Cir. 2004); *Bachman v. Bagley*, 487 F.3d 979, 984–85 (6th Cir. 2007); *Souliotes v. Evans*, 622 F.3d 1173, 1179–80 (9th Cir. 2010) (vacated on other grounds); *Mardesich v. Cate*, 668 F.3d 1164, 1171 (9th Cir. 2012);

*Prendergast v. Clements*, 699 F.3d 1182, 1187–88 (10th Cir. 2012); *Zack v. Tucker*, 704 F.3d 917, 926 (11th Cir. 2013).

Hammond states that he was unaware of the factual predicate of his ineffective assistance of counsel/abandonment claim until a 2015 hearing to reopen post-conviction proceedings produced testimony about an office policy in place at the Office of the Public Defender for Prince George's County.  He thereby implies that the claim is subject to the limitation calculation found in § 2244(d)(1)(D), requiring a § 2254 petition to be filed within one-year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  Hammond received two letters from the Office of the Public Defender during his trial in 1997, responding to his complaints about his trial attorney and denying his requests to remove his trial attorney from his case.  ECF No. 1-7 at 29-30 (July 26, 2011 Post-Conviction Transcript).[1]  Even if the timeliness of this claim is governed by § 2244(d)(1)(D), it is still untimely as Hammond was aware of the facts underlying the claim during his trial.  Thus, the conclusion that he did not know the factual predicate underlying his choice of counsel claim until the 2015 hearing is not persuasive, nor can Hammond demonstrate due diligence in presenting this claim.

Alternatively, Hammond asserts that he is actually innocent based on newly discovered evidence, *i.e.*, the office policy.  This is not the type of evidence contemplated for support of an actual innocence claim.  Examples of the type of new evidence that have been found to satisfy the actual innocence gateway standard are: (1) new DNA evidence and expert testimony "call[ing] into question" the "central forensic proof connecting [the petitioner] to the crime," as well as

---

[1] During this same hearing, Hammond alleged that his trial attorney was "not trying to win his case" and that his attorney had "put in no effort to win his case at all."  ECF No. 1-7 at 29.

"substantial evidence pointing to a different suspect," *House*, 547 U.S. at 540-41; (2) "sworn statements of several eyewitnesses that [the petitioner inmate] was not involved in the crime" and affidavits "that cast doubt on whether [the petitioner inmate] could have participated" in the offense, *Schlup*, 513 U.S. at 331; (3) a third party's consistent and repeated statement that the third party committed the offense, *Jones v. McKee*, No. 08 cv 4429, 2010 WL 3522947, at *9-10 (N.D. Ill. Sept. 2, 2010); *Carringer v. Stewart*, 132 F.3d 463, 478-79 (9th Cir. 1997) (finding that the petitioner opened the actual innocence gateway where another person testified under oath that he committed the offense and separately boasted to other individuals that he set-up the petitioner); and (4) documentary evidence indicating that the petitioner was in another country on the day of the offense and five affidavits from individuals stating that the petitioner was outside the country at the precise time of the offense, *see Garcia v. Portuondo*, 334 F. Supp. 2d 446, 452-56 (S.D.N.Y. 2004). *See generally Schlup*, 513 U.S. at 324 (providing the Supreme Court's statement that examples of sufficient new reliable evidence for a gateway claim include "exculpatory evidence, trustworthy eyewitness accounts, or critical physical evidence").

The existence of the office policy, which is innocuous on its face, does not establish that Hammond did not engage in the behavior at issue; that the victim consented;[2] or that no crime occurred. There is no viable actual innocence gateway claim before this Court that would serve to excuse the untimeliness of the ineffective assistance of counsel claim and therefore the merits of the claim may not be reached.

---

[2] Hammond makes reference to a witness who was inside the apartment during the incident leading to his arrest and claims this witness would testify the victim consented to the sexual encounter with Hammond. ECF No. 15 at 3. The witness he refers to was his co-defendant who testified at the trial. *Id*. Although he states the witness gave his trial attorney an affidavit exonerating him, such affidavit is not in the record before this Court, nor was trial counsel confronted about such an affidavit at either the post-conviction hearing or the motion to re-open hearing. ECF No. 1-7, 1-8, and 1-9. This bald claim, unaccompanied by any statement under oath from that witness, does not amount to "evidence" upon which an actual innocence claim may rest. *See Teleguz*, 806 F.3d at 809 (new evidence must demonstrate that it is more likely than not that no reasonable juror would conclude that petitioner is guilty beyond a reasonable doubt).

Hammond's assertion that there is no time limitation on claims regarding a fundamental constitutional right is not an accurate statement of the law.  Hammond relies in part on the Supreme Court's decision in *Weaver v. Massachusetts*, 582 U.S. 286 (2017) for the proposition that his inability to select counsel of choice is a structural defect for which he need not demonstrate prejudice.  *See* ECF No. 16 at 4.  In that case, the Court noted in pertinent part that:

> [A]n error has been deemed structural if the effects of the error are simply too hard to measure.  For example, when a defendant is denied the right to select his or her own attorney, the precise effect of the violation cannot be ascertained.  Because the government will, as a result, find it almost impossible to show that the error was harmless beyond a reasonable doubt, . . . the efficiency costs of letting the government try to make the showing are unjustified.

*Id*. at 295–96 (internal quotation marks and citations omitted).  Whether Hammond would be required to submit proof that prejudice resulted from the ineffective assistance of counsel if the merits of his claim could be addressed has no impact on the timeliness of his federal habeas petition, nor does it offer a basis for this Court to reach the merits despite the untimely filing.  Further, it was well established long before Hammond's trial that criminal defendants are constitutionally entitled to counsel of choice and that criminal defendants are entitled to discharge counsel.  *See Wheat v. United States*, 486 U.S. 153, 159 (1988) (recognizing that "the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment"); *Powell v. State of Ala.*, 287 U.S. 45, 53 (1932) ("It is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."); *see also Faretta v. California*, 422 U.S. 806, 834-36 (1975) (concluding that the Sixth Amendment entitles a criminal defendant to waive counsel and represent himself).

**B.    Ineffective Assistance of Counsel**

To the extent that the Fourth Circuit's remand requires this Court to address the merits of Hammond's ineffective assistance of counsel claim, the Court directs attention to the November

17

6, 2015 Opinion and Order denying Hammond's motion to re-open post-conviction proceedings. ECF No. 1-16.  There, Hammond claimed that trial counsel was ineffective for failing to: object to the admission of the victim's medical records on grounds they were hearsay not falling within any exception and were unreliable due to internal inconsistencies; inform the court of his request to discharge counsel; and properly advise him of the benefits of accepting a plea offer of four to nine years' incarceration.  *Id*. at 5-7.

Hammond's first claim centered on the fact that the State did not call as a witness the doctor who examined the victim at the Prince George's Sexual Assault Center, which should have prompted counsel to object to the records coming in on hearsay grounds.  *Id*. at 5.  He further alleged that the records were prepared in anticipation of the criminal trial and do not satisfy any hearsay exception.  *Id*.  Lastly, he claimed the records showed that there were no positive findings of gynecological trauma, but the jury was nevertheless led to believe that the victim was raped. *Id*. at 6.  Trial counsel testified at the hearing that while he did not recall why he didn't argue that "the medical record showed no signs of anogenital trauma and no checked findings of gynecological trauma . . . it would have been his practice to be familiar with all the evidence that came into trial, including the medical record at issue."  *Id*. at 7.  The state argues that it was "likely" the medical record would have been admitted on an exception to the hearsay rule, "including present sense impression and excited utterance" and that had the treating physician been available to testify, the "testimony could have been more damaging than the medical record."  *Id*. at 8.

The state court found that Hammond's first ineffective assistance of counsel claim did not result in prejudice to Hammond.  ECF No. 1-16 at 11.  The court observed:

> Looking first to the medical records, there were any number of grounds under which they might have been admitted.  More importantly, those records contained what readily appears to be exculpatory material beneficial to Petitioner and therefore without prejudice to him.  The argument that they should

> not have been admitted due to many inconsistencies within the records is a
> matter for argument at best.   That argument does not go to authenticity.
> Additionally, a review of the entire record shows that the evidence, with or
> without the medical records, was overwhelming.

*Id*.  The state court's application of the *Strickland* standard to the facts presented is reasonable and

would not be a basis for federal habeas relief under § 2254(e)(1) had the claim been timely filed.

In his second claim, Hammond argued that trial counsel and his supervisor should have

informed the court of his multiple requests to discharge counsel.  ECF No. 1-16 at 6.  Hammond

claimed unfair prejudice resulted from this failure because "given trial counsel's failure to

investigate [his] case and his failure to make use of the available medical evidence to bolster his

defense, there is a significant possibility that the [trial court] would have found that [he] had a

meritorious reason for wanting to discharge his trial attorney."  *Id*.  During his testimony at his

first post-conviction hearing, Hammond expressed his opinion that public defenders "work more

with the State than with the defendant;" and that they weren't "really trying to help me."  ECF No.

1-7 at 30-31.  During the hearing on the motion to reopen, Hammond testified that he had a heated

argument with his attorney the first time he met him and decided that day to fire him because they

were not communicating well.  ECF No. 1-9 at 17.

Judge Maureen Lamasney, former District Public Defender for Prince George's County,

testified that at the time of Hammond's trial the office policy was not to reassign a case at the

request of a defendant because it "was the only way to maintain control over the assignment

process."  ECF No. 1-16 at 9.  Additionally, the public defender's office did not, as a practice,

notify the court of a defendant's request to remove his attorney from his case "to protect the client

from the possible perception that the client was being unreasonable."  *Id*.

In rejecting this claim, the state court observed that:

Petitioner's basic complaint suggests a personality conflict.  Had this issue been communicated to the trial judge, it would be difficult at best to find that this was a meritorious basis for discharging counsel.  Thus, once again, there is a lack of prejudice to Petitioner.  Furthermore, quite understandably, the prevailing norm at that time was not to communicate the request to the Court.

*Id*. at 12.  This analysis is also not an unreasonable application of the *Strickland* standard to the facts of the case and, if this claim were not time-barred, it would not be an adequate basis for federal habeas relief.

Hammond's third claim concerns his allegation that trial counsel told him to reject a plea offer wherein he would have pleaded guilty to second-degree rape and possession with intent to distribute in exchange for a sentence between four and nine years.  ECF No. 1-16 at 7.  At the hearing on the motion to re-open, a letter from Hammond to his trial attorney was introduced which stated that trial counsel had stated that he was not interested in a plea offer because he did not believe the victim would show up for trial.  ECF No. 1-8 at 56.  Hammond also claimed that trial counsel told him he would win the case and Hammond would be acquitted.  ECF no. 1-16 at 7.  In earlier proceedings, Hammond stated that he would not consider a plea deal that required him to plead guilty to a rape charge.  ECF No. 1-7 at 23.  Trial counsel testified at the post-conviction hearing that he discussed the plea offer with Hammond.  ECF No. 1-7 at 41.  During the hearing for the motion to re-open, trial counsel reiterated that his general practice would be to communicate all plea offers to a client and to inform the client of the maximum penalty at issue.  ECF No. 1-8 at 55.

Neither the post-conviction court nor the court considering Hammond's motion to re-open credited Hammond's recollection of the plea offer issue.  The post-conviction court noted that Hammond was essentially complaining that his attorney did not urge him strongly enough to accept the plea offer, but that counsel was not "under any duty to yell at him, to pressure him."

ECF No. 1-7 at 73.  The court further noted that "if anybody made an error in judgment, it was the defendant not accepting what appears to be an extremely favorable treatment" and found no deficiency in the manner in which counsel conveyed the offer and explained it.  *Id.*

The court considering the motion to re-open found that "the plea offer was in fact communicated to Petitioner" and was "also satisfied that Petitioner rejected the offer."  ECF No. 1-16 at 12.  The court also found that Hammond's claim that counsel advised him to reject the offer lacked credibility; rather, the court was "satisfied that Petitioner believed the victim would not appear to testify and was adamant in his refusal to accept the plea offer."  *Id.*

Both decisions involved findings of fact and determination of witness credibility which are entitled to the deference requirement found in § 2254(e)(1).  The state court's determination in this regard is presumed correct and Hammond fails to rebut that presumption.  Thus, even if this claim had been raised in a timely manner, it would not be a viable basis for federal habeas relief.

## CONCLUSION

Based on the above analysis, this Court finds that Hammond's ineffective assistance of counsel claim is time-barred and is otherwise without merit.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 580 U.S. 100, 115 (2017).  The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied.  *See* 28 U.S.C. § 2253(c)(2).  Petitioner may still request that the

United States Court of Appeals for the Fourth Circuit issue such a certificate.  *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate Order dismissing the petition and declining a certificate of appealability follows.


\_\_7/5/2023_____                         _____/s/_____
Date                                                                    RICHARD D. BENNETT
                                                                   UNITED STATES DISTRICT JUDGE